Townsend and another vs. Peasley.

---

## TOWNSEND and another vs. PEASLEY.

CONTRACTS: EVIDENCE. (1) *Statute of frauds.* (2) *Prior oral agreement not admissible to contradict written lease.*

By a deed of indenture, defendant leased to plaintiffs certain mineral lands adjoining his own " diggings," and, as a consideration therefor, plaintiffs covenanted to work the tracts of land demised to them in a good and miner-like manner, " and to use such machinery as may [might] be necessary to unwater and work said [demised] tracts or mines, and to pay as rent " to defendant one-sixth part of the mineral raised by them. In the present case the plaintiffs sue upon an alleged *oral* agreement entered into on the day before said deed of lease was executed, but on the same day that the terms thereof were agreed upon; by which alleged oral agreement plaintiffs were to put a pump into the grounds then being worked by them (being the same lands let to them by said lease), and to drain the water from defendant's "diggings," and defendant was to pay them therefor one-sixth of the mineral which he might take out of his "diggings" below the line at which the water would stand if the ground were not so drained by plaintiffs' pump. *Held,*

1. That the alleged *oral* agreement was merely in the nature of one

to pay plaintiffs for services performed on defendant's land, and did not create any interest in such land, and was therefore not void by the statute of frauds.

2. That as it is not claimed that plaintiffs have done anything more by the use of their pump, than to "unwater" the lands leased to themselves, the benefits to defendant's adjoining mine being merely *incidental* to this, evidence of such oral agreement tended, in effect, to prove an additional and different consideration from that named in the lease for unwatering their mines as there stipulated, and such evidence was inadmissible.

APPEAL from the Circuit Court for *La Fayette* County.

The complaint alleges that on or about the 25th of November, 1870, the plaintiff *Absalom A. Townsend,* and one Addison A. Townsend, were engaged in mining for lead ore on certain land in the town of Shullsburg, in said county, and the defendant was the owner or occupant of certain adjoining land; that defendant, being desirous of mining for mineral on his said land below the common water level, then entered into an agreement with said *Absalom A. Townsend* and Addison A. Townsend, by the terms whereof defendant agreed with them that if they would put a pump on the grounds then worked by them, and run a drift or level to defendant's ground, for the purpose of draining the water from defendant's land as far as practicable, he (defendant) would pay them one-sixth of all the mineral or proceeds thereof raised by him, or which might thereafter be taken out by him from the ground below the common water level, by reason of the draining of the water as aforesaid from defendant's said land; that in consideration of this agreement of defendant, said *Absalom A.* and Addison A. Townsend agreed to put a pump on their ground as aforesaid, and to run said drift or level as soon as practicable; that they did put the pump on their ground, sank the pump shaft deeper, and ran said drift or level as agreed; that the same drained and continues to drain or lower the water below the water level in defendant's said land; that by reason of such draining, defendant has taken out from his said ground, since April 14, 1871, a

large quantity of mineral or lead ore, and has sold the same or the greater part thereof, but has refused to pay one-sixth of the mineral so taken out by him, or the proceeds thereof, though often requested so to do; that the value of said one-sixth was $200; and that, before any of said mineral was taken out, Addison A. Townsend " sold and conveyed all his interest in the said one-sixth of the mineral that might be raised as aforesaid by defendant," to the plaintiff *Walter B. Townsend.* Plaintiffs therefore demand judgment for said sum of $200. The answer was a general denial.

At the trial, defendant objected to the admission of oral evidence to establish the contract set up in the complaint, on the ground that it was a contract for an interest in the realty; but the objection was overruled. It appeared that on the same day on which the verbal agreement here sued on is alleged to have been made, the same parties agreed verbally upon the terms of a written lease by which defendant was to lease to plaintiffs the land referred to in the complaint as lands worked by the plaintiffs, and that this lease was reduced to writing and executed on the next day. By the terms of this lease (which was put in evidence), the lessees agreed " to work the said tracts of land in a good and miner-like manner, and to use such machinery as may [might] be necessary to unwater and work said tracts or mines, and to pay as rent to said first party [*Peasley*) one-sixth part of the minerals raised or caused to be raised on said premises " by said lessees, " and to work said mine constantly, and not to discontinue work more than ten days at any one time without the consent of said first party," etc. The instrument recites that the consideration for the making of the lease by *Peasley* is " the covenants and rents " thereinafter mentioned; and there are no covenants therein on the part of the lessees except those above stated.

The remainder of the evidence, which was voluminous, need not be stated here.

The court instructed the jury that the only material ques-

tions of fact were : first, whether any such oral contract as that alleged by the plaintiff was actually entered into by the parties ; and secondly, whether the mineral, one-sixth of the value of which was sued for in this action, was actually unwatered by plaintiffs' horse pump, under such oral contract.

Verdict for the plaintiffs, for $160 damages. A new trial was denied ; and defendant appealed from a judgment on the verdict.

*Cothren & Lanyon,* for appellant :

Sec. 6, ch. 106, R. S., declares that "no estate or interest in lands, other than leases for a term not exceeding one year, nor any trust or power over or concerning or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by deed or conveyance in writing subscribed by the party creating, granting, surrendering or declaring the same, or by his lawful agent thereunto authorized by writing." Sec. 8 of the same chapter provides that every contract for the leasing for a longer period than one year, or for the sale of any lands or interest in lands, shall be void unless the contract, or some note or memorandum thereof expressing the consideration, be in writing and be subscribed by the party by whom the lease or sale is to be made." The complaint in this action claims a continuing and never ending interest in the products of defendant's land. It sets up an agreement by which defendant and his heirs and assigns forever are constituted tenants of the plaintiff as to such lands. This can be done only by an instrument in writing. *Smith v. Finch,* 8 Wis., 245 ; *Brandeis v. Neustadtl,* 13 id., 142 ; *Dodge v. Hopkins,* 14 id., 630 ; *Gillett v. Treganza,* 6 id., 344 ; *Duinneen v. Rich,* 22 id., 552 ; *Rice v. Roberts,* 24 id., 464 ; *Howard v. Easton,* 7 Johns., 205. An interest in a mine is an interest in realty. *Stoughton v. Leigh,* 1 Taunt., 402. In the following cases parol contracts relating to realty were held void : *Tryon v. Mooney,* 9 Johns., 358 ; *Hall v. Shultz,* 4 id., 240 ; *Sherrill v. Crosby,* 14 id., 358 ; *Burlingame*

Townsend and another vs. Peasley.

*v. Burlingame*, 7 Cow., 92; 5 id., 192; *Ryan v. Dix*, 25 Barb., 440; *Bank v. Crary*, 1 id., 542; *Wonen v. Leland*, 2 id., 613; 18 id., 347; 7 id., 59; *Green v. Armstrong*, 1 Denio, 550; *Mc-Gregor v. Brown*, 6 Seld., 114; *King v. Brown*, 2 Hill, 485; 1 Johns. Ch., 341; 5 id., 11; 2 Paige, 181; 3 id., 481; 1 Barb. Ch., 499. See 2 Story's Eq. Jur., § 75. 2. The written contract put in evidence extinguished the previous parol agreement, in the absence of any fraud or mistake. *Whiting v. Gould*, 2 Wis., 588; *Munford v. McPherson*, 1 Johns., 414; *Vandervoort v. Smith*, 2 Caines, 160; *Parkhurst v. Van Cortlandt*, 1 Johns. Ch., 282; *Cooper v. Tappan*, 4 Wis., 369; *Sigerson v. Cushing*, 14 id., 547; *Reed v. Jones*, 8 id., 392; *Downie v. White*, 12 id., 176; *Burhans v. Johnson*, 15 id., 288; *Williams v. Slaughter*, 2 id., 357; *Rice v. Roberts*, 24 id., 461; *Merriam v. Field*, id., 640; 1 Greenl. Ev., § 275.

*Orton & Osborn*, for respondents:

Contracts to perform service or make improvements upon the lands of another, or to pay for improvements already made, are not within the statute of frauds. *Frear v. Hardenbergh*, 5 Johns., 272; *Benedict v. Beebee*, 11 id., 145; *Lower v. Winters*, 7 Cow., 263; 1 Hilliard on Con., 408. The agreement to pay plaintiffs one-sixth part of the mineral raised by defendant is not an agreement to part with any interest in the land. An agreement to sell any interest in the mineral *before the same is detached from its natural bed*, would be within the statute; but when the mineral is broken from the earth and raised to the surface, it becomes personal property. Bainbridge on Mines, 3; *Gillett v. Treganza*, 6 Wis., 346; *Knowlton v. Culver*, 1 Chand., 214. There is a class of cases holding that growing timber and other natural or spontaneous growths of land, being a part of the realty, cannot be sold while attached to the realty, except by a written contract. Agricultural products, however, are regarded as personal property, whether severed from the land or not. 1 Hilliard on Con., 404, note (*a*). No case can be found holding a contract to sell void under the statute of frauds,

where the thing sold, though formerly a part of the realty, has become personalty by severance from the land, or where the seller has agreed to sever it from the realty, and to sell after such severance. 1 Hilliard on Con., 407; *Smith v. Surman*, 9 Barn. & Cress., 566; *Claflin v. Carpenter*, 4 Met., 580; *Cain v. McGuire*, 13 B. Mon., 340; *Erskine v. Plummer*, 7 Greenl., 447; 2 Parsons on Con., 312, note (*k*). 2. The oral contract was not merged in the written lease, the subject matter being entirely distinct.

COLE, J. We are inclined to agree with the counsel for the plaintiffs, that the contract sued on was not void under the statute of frauds. It is claimed that it created an interest in the realty and in the products of the soil for an indefinite period, and must therefore be in writing, in order to be valid. The contract, as set out in the complaint and attempted to be proven on the trial, was, in substance, that if the plaintiffs would put a pump on the ground then being worked by them, and drain the water from the diggings which the defendant was working, the defendant agreed to give or pay one-sixth part of the mineral which he might take out below where the water would have stood had not the ground been drained by the plaintiffs' pump. The counsel for the plaintiffs insist that this contract does not create an interest in lands, within the meaning of the statute of frauds, but is essentially the same as any other contract for the performance of services upon the real estate of another, like the erection of a building, digging a well, or building a fence. If the analogy between this contract and one to perform labor on the land of another be correct — and we confess we are unable to perceive any distinction in the two cases, — then it is very apparent that the statute does not apply to it. *Frear v. Hardenbergh*, 5 Johns., 271; *Lower v. Winters*, 7 Cowen, 263. It does not create an interest or estate in lands, but only provides the amount of compensation which the plaintiffs were to receive for the services which they were to

Townsend and another vs. Peasley.

perform, namely, drain the water from the ground upon which the defendant was mining. It is true, the plaintiffs call this one-sixth of the mineral which they were to receive, " rent," but this is evidently an inaccurate use of that word. It was more properly the measure of compensation which they were to receive for draining the defendant's mines. It was not otherwise than an agreement to pay so much money for the services which the plaintiffs were to perform. So we should feel constrained to overrule the objection that the promise of the defendant was within the statute, if this were the only difficulty in the way of a recovery; but it is not so.

On the same day that this parol agreement was made, the parties made a contract by which the defendant leased to the plaintiffs a certain portion of his lands, defined by metes and bounds, for mining purposes. This lease was reduced to writing and executed by the parties on the next day after the alleged contract sued on is said by the plaintiffs to have been made. As a consideration for the lease, the plaintiffs covenanted and agreed to work the tracts of land demised, in a good and miner-like manner, "and to use such machinery as may [might] be necessary to unwater and work said tracts or mines; and to pay as rent to said first party" one-sixth part of the mineral raised by them. Now it seems to us the effort is to prove a parol agreement which really relates to the subject-matter of the written lease, and in effect adds an additional consideration for the covenants of the plaintiffs as there contained. The parol contract is essentially a part and parcel of the agreement which was reduced to writing, and which, upon well settled principles, we must assume contains the final stipulations of the parties. It is not claimed that anything was omitted from the written lease through fraud or mistake. It seems that the lease was drawn by Addison A. Townsend (a son of one of the plaintiffs), the next day after the terms of the lease were agreed upon, and after the making of the alleged parol contract to pay the one-sixth part of the mineral which

should be raised by the defendant from his ground drained by the plaintiffs' pump; and he says that he asked the parties at the time if the written contract "*had all in it,*" and that they were satisfied with it. The written lease provided that the plaintiffs should use such machinery as might be necessary to unwater "and work said tracts;" and it is not claimed that they have done any more than drain the water from their own mines by the pump which they have used. If the plaintiffs stipulated for compensation for a benefit which would result incidentally to the defendant from their doing what the lease contemplated they should do, this condition should have been incorporated in the written instrument. For it was a part of the consideration for the covenants there entered into, if ever such a stipulation was made.

The counsel for the plaintiffs contends that the parol contract was not merged in the written lease, but was an entirely distinct and independent agreement. But it seems to us that it related to the same subject matter, and can not be separated from it. We can not see how the case would be different if the defendant were to insist upon his right to prove by parol that the agreement was that he was to have a one-fourth part of the mineral raised by the plaintiffs, instead of the one-sixth stipulated for in the lease. With equal reason it might be claimed that the defendant could show another and separate contract in regard to the amount of rent to be paid by the plaintiffs, as that the plaintiffs may show that the consideration for the performance of the covenants on their part was something different from that mentioned in the lease. The evidence in both cases is to be excluded, under the rule recognized and enforced by all the authorities on the subject, that "parol contemporaneous evidence is inadmissible to contradict or vary the terms of a written instrument." Of course the intelligent counsel for the plaintiffs does not question the entire correctness of this rule of evidence, but he contends that it is not applicable to the case before us. He in-

Townsend and another vs. Peasley.

sists that the subject matter of the two contracts is distinct and different, and that the previous parol contract by which the defendant agreed to pay the value of one-sixth of all the mineral which he should raise from ground drained by the plaintiffs' pump, was not merged in the written lease subsequently executed. But it seems to us this view is untenable, and that we must assume that the written lease contains the whole engagement of the parties in regard to draining and working the ground. The plaintiffs would have the court infer that they were to be paid an additional compensation to that mentioned in the lease, for "using such machinery as may be necessary to unwater and work said tracts or mines;" in other words, that a parol contemporaneous contract was made, by which they were to be paid another and additional consideration from that mentioned in the written instrument, for an advantage which might result to the defendant from a performance of the covenants they had undertaken to perform. This is really substituting a new and different contract for the one the parties entered into; and we think all the evidence relating to this parol contract should have been excluded from the consideration of the jury. The fact that no such agreement was inserted in the lease, affords a conclusive presumption that it was not in accordance with the final understanding and engagement of the parties. On the trial, the court held that this parol contract might be shown, and in various ways ruled contrary to these views.

We therefore think the judgment must be reversed, and a new trial ordered.

*By the Court.* — So ordered.